IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Michael Sullivan, | |
| *On behalf of himself and those similarly situated*, | Case No. 3:18-cv-1455-RDM |
| Plaintiff, | Judge Robert D. Mariani |
| v. | |
| Lewisburg Pizza, LLC, *et al.*, | |
| Defendants. | |

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT

Plaintiff asks that the Court grant final approval of the parties' Settlement Agreement, Doc. 87-1, order the parties to carry out the terms of the Settlement Agreement, and dismiss the case with prejudice. The Settlement Agreement resolves the individual, collective, and class-wide claims raised in this lawsuit.

Respectfully submitted,

*/s/ Phil Krzeski*
Amy R. Boring, Esquire
ID #208461
Amy@sz-law.com
Michael J. Zicolello, Esquire
ID #65522
mike@sz-law.com
333 Market Street
Williamsport, PA 17701

1

(570)321-7554

Andrew R. Biller (Lead Counsel) (*pro hac vice*)
BILLER & KIMBLE, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620
abiller@billerkimble.com

Andrew P. Kimble (*pro hac vice*)
Philip J. Krzeski (*pro hac vice*)
BILLER & KIMBLE, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 202-0710
Facsimile: (614) 340-4620
akimble@billerkimble.com

www.billerkimble.com

*Counsel for Plaintiff and the putative class*

2

Memorandum in Support of Plaintiff's
Unopposed Motion for Final Settlement Approval

## 1. Introduction

On November 4, 2020, the Court preliminarily approved the parties' Settlement Agreement and approved the distribution of Notice to the class. *See* Doc. 91. The Notice process is now complete. None of the approximately 1,415 Domino's delivery drivers at issue in this case objected to the terms of this settlement (the "Settlement"), and no Attorney General has sought to intervene in these proceedings in response to the Class Action Fairness Act ("CAFA") Notice served on them by defense counsel in November 2019 as required by 28 U.S.C. § 1711 (*see* Docs. 88, 88-1, 88-2, and 88-3).

The Parties now seek an order (1) granting final approval of the Settlement Agreement previously filed as Doc. 87-1 as fair, reasonable, and adequate; (2) certifying this case as a Rule 23 Class Action for settlement purposes; (3) approving the requested award of attorneys' fees and costs; (4) approving the service award; (5) dismissing the action with prejudice; and (6) ordering the parties to carry out the remaining terms of the Settlement Agreement.

## 2. Background and Case History

Plaintiff Michael Sullivan delivered pizzas for Defendants, who operate or have operated 22 Domino's Pizza franchise stores in Pennsylvania. Plaintiff filed a Class and Collective Action Complaint on July 23, 2018, on behalf of himself and similarly situated eligible delivery drivers alleging wage and hour violations under the Fair Labor Standards Act, 29 U.S.C. Sections 201 *et*

3

*seq.* (the "FLSA" claims) and the Pennsylvania Minimum Wage Act, Sections 333.101 *et seq.*, and related statutes at 43 Pa.C.S. Section 251 *et seq.* (the "PMWA" claims).

On August 2, 2018, Plaintiff moved to send notice of the lawsuit to similarly situated delivery drivers, and to allow them the opportunity to "opt-in" to the FLSA collection action. *See* Doc. 10. After discussion among the parties, they agreed to send notice and conditionally certify an FLSA collective action. *See* Doc 27. In doing so, Defendants did not waive their rights to later argue that the collective action in this case should be decertified or to argue that some Class Members may have signed arbitration agreements with class action waivers. Approximately 186 current and former delivery drivers opted in to join the conditionally certified collective action under the FLSA in this lawsuit, and all current and former eligible delivery drivers remained potentially eligible to become a part of the Rule 23 class that Plaintiff sought to certify under the applicable to the PMWA claims in this lawsuit (hereinafter collectively referred to as the "Class Members").

Following the conclusion of this 90-day notice period, the parties asked the Court to stay the proceedings to facilitate settlement discussions and informal discovery related to those negotiations. *See* Doc. 67. The case's complexity and Defendants' counsel's serious family matter required the parties to request additional time to negotiate a settlement. *See, e.g.*, Doc 75, pp. 2–3.

Ultimately, on September 25, 2019, the parties attended an all-day private mediation in Washington, D.C. with JAMS mediator Linda Singer. Ms. Singer was able to help the parties reach a settlement to resolve this lawsuit. On November 14, 2019, Plaintiff filed an Unopposed Motion for Preliminary Approval of Class and Collective Action Settlement. *See* Doc. 87. The Court

approved Plaintiff's Motion and set a final fairness hearing for February 18, 2021. *See* Doc. 91. Plaintiff now asks the Court to grant final approval.

## 3.  Description of Legal Claims

Plaintiff's Complaint alleges three primary wage and hour violations: that (1) Defendants failed to properly reimburse delivery drivers for mileage expenses incurred while making deliveries on Defendants' behalf; (2) Defendants improperly paid delivery drivers a tipped wage rate for time delivery drivers spent working in a non-tipped capacity; and (3) Defendants failed to comply with the requirements for taking a tip credit under 29 U.S.C. § 203(m). Plaintiff explained each claim in the Motion for Preliminary Approval (Doc. 87, § 3), and provides additional information below.

### 3.1.  Under-Reimbursement Claim

The primary claim in this case is the mileage under-reimbursement claim. It is undisputed that food delivery companies must pay their minimum wage workers for expenses incurred as a result of the workers using their own cars for deliveries. The real dispute is over how much Defendants should have reimbursed.

Plaintiff claims that Defendants had two options: either (1) track and reimburse each driver's actual expenses or (2) reimburse delivery drivers at the IRS standard business mileage rate. Doc. 1, ¶¶ 61–76; *Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146, 2019 WL 5725043 (S.D. Ohio Nov. 5, 2019); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 WL 6310376 (S.D. Ohio Nov. 25, 2019). Defendants deny Plaintiff's allegations; dispute that they were required to reimburse at the IRS rate; and now point to an Opinion Letter issued by the U.S. Department of

Labor (the "DOL") on August 31, 2020, well after the parties mediated this case and reached agreement on the terms of settlement, to support their position.[1]

Here, Plaintiff alleges Defendants failed to properly reimburse him. *See* Doc. 1, at ¶ 77. Data produced by Defendants shows drivers were reimbursed, on average, $.30 per mile and drove approximately 8,680,000 miles. On the mileage reimbursement claim, the possible unpaid wages range from $0 to about $.25 per mile (the difference between the approximate average IRS rate and the average reimbursement paid). At the IRS rate, Plaintiff takes the position that the drivers' unpaid wages on the under-reimbursement claim are approximately $2,170,000.00.

### 3.2. "Dual Jobs" Claim

Plaintiff asserted that Defendants improperly paid drivers a tipped minimum wage for time spent in the store doing non-tipped work. Put simply, Plaintiff alleges that drivers spent time working inside the store performing non-tipped tasks for which they were owed full minimum wage, but were paid a tipped minimum wage. This claim is generally referred to as a "dual jobs" claim. Defendants counter that the alleged "non-tipped work" was related to the drivers' tipped work such that Defendants could lawfully pay drivers tipped minimum wage for all of their in-store time. In any case, the parties agree that by July 1, 2016, Defendants changed their practices to pay drivers a different wage (at or above minimum wage) for in-store work versus on-the-road work.

The damages for a "dual jobs" claim is the difference between full minimum wage and the tipped minimum wage that Defendants paid. In this case, Plaintiff takes the position that the unpaid

---

[1] In Opinion Letter FLSA 2020-12, the DOL expressly states, in response to a pizza delivery business' inquiry, that employers are permitted to reimburse employees who use their personal vehicle for work-related driving at a "reasonable approximation of actual expenses incurred," and that use of the IRS rate is "merely optional."

wages amount to approximately $151,000.00, plus liquidated damages under Pennsylvania law and the FLSA.

### 3.3. Tip Credit Notice Claim

Plaintiff argues that Defendants did not properly pay a tipped wage at all because, according to Plaintiff, Defendants did not comply with the FLSA's tip credit notice provision. See 29 U.S.C. 203(m). In order to pay a tipped wage, the FLSA requires employers to provide their employees with notice of the FLSA's tip credit provisions. *Id.*; *see also* 29 C.F.R. 531.59. The notice requirement is "strictly construed," and must be complied with even if the employee receives tips at least equivalent to minimum wage. *Chung v. New Silver Palace Restaurant, Inc.*, 246 F.Supp.2d 220, 229 (S.D.N.Y. Sept. 13, 2002); *see also Solis v. Min Fang Yang*, 345 Fed.Appx. 35, 38 (6th Cir. 2009).

Defendants argue that they did, in fact, provide proper tip credit notice. If this factual dispute resolved in Defendants' favor, there would be no damages at all related to this claim. If it resolved in Plaintiff's favor, the damages would be the difference between the tipped minimum wage that Defendants paid and full minimum wage for all hours worked. In this case, Plaintiff takes the position that the amount due would be approximately $1,100,000.00 (plus the possibility additional liquidated damages).[2]

---

[2] Note that if Plaintiff prevailed on the tip credit notice claim and the dual jobs claim, the damages related to the dual jobs claim would completely overlap with the tip credit notice claim damages. Thus, in this scenario, Plaintiff and the class would be entitled to only the tip credit notice damages because they could not receive a double recovery.

4.  **Summary of Settlement Terms**

The Settlement Agreement creates a Settlement Fund of up to $1,200,000.00 payable over three years (the "Settlement Fund"). *See* Doc. 87-1 at ¶ 3A. The Settlement Fund will then be distributed to the Class Members on a pro rata basis, regardless of whether they submitted an opt-in form during these proceedings or not (the "Distribution"). On average, each Class Member will receive approximately $550.00.

The Settlement Fund is prorated among Class Members based on three factors (1) how many miles each Class Member drove, (2) how many hours each Class Member worked, and (3) whether the Class Member filed an opt-in form in this case and, thus, preserved their FLSA claims. The Distribution is calculated as follows:

o   Any amounts awarded for attorneys' fees, costs and expenses, service awards, and any other amounts not allocated to Class Members will be subtracted from the Settlement Amount. The remainder will become the Class Fund ("Class Fund"), which will be distributed as follows:

o   75% of the Class Fund will be allocated to the "Mileage Reimbursement Claim" and divided based on miles driven.

o   25% of the Class Fund will be allocated to the "Dual Jobs and Tip Credit Notice" claim and divided based on hours worked.

o   Any Class Members who opted into the FLSA conditionally certified class by September 25, 2019, will be entitled to a 1.5 share of the Class Fund, and any Class Members who did not will be entitled to a single share.

*Id*. at ¶ 3E.

Class Members who do not opt out of the lawsuit, will release their Pennsylvania law claims concerning "alleged under-reimbursement of mileage and other car-related expenses, hours worked inside the store in a non-tipped capacity (i.e., a 'dual jobs' claim), and tip credit notice during the Class Period." *Id.* at §5. Class Members who previously opted into the case will also release their FLSA rights concerning the same claims. *Id.*

In order to account for Defendants' financial condition, the Agreement allows Defendants to break up the settlement payments into three equal payments. *Id.* at §3(F). Defendants must make the first payment approximately 44 days after the Court grants final approval of this Agreement. *Id.* The next will be made on or before the one-year anniversary of the first payment, and the final payment will be made on or before the two-year anniversary of the first payment. *Id.* In the event that Defendants fail to make a payment (and do not cure the failure after notice as outlined in the Agreement), Defendants agree to a confessed judgment of $1,400,000.00 minus any settlement payments made. *Id.* at §3(I).

## 5. Standard for Settlement Approval

### 5.1. Standard for Wage and Hour Settlements

It is well-established that "Congress enacted the FLSA for the purpose of 'protecting all covered workers from substandard wages and oppressive working hours.'" *Bettger v. Crossmark, Inc.*, No. 1:13-CV-2030, 2015 WL 279754, at *3 (M.D. Pa. Jan. 22, 2015.) Accordingly, in order "to safeguard employee rights made mandatory by the statute, a majority of courts have held that bona fide FLSA disputes may only be settled or compromised through payments made under the supervision of the Secretary of the Department of Labor or by judicial approval of a proposed settlement in an FLSA lawsuit." *Bettger* at *8. As the district court noted in *Bettger*, "Although the

Third Circuit has not addressed whether such § 216(b) actions claiming unpaid wages may be settled privately without first obtaining court approval, district courts within the Third Circuit have followed the majority position and assumed that judicial approval is necessary." *Id.* at *8–9. Moreover, "In the absence of guidance from the Third Circuit, courts have routinely employed the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores, Inc. v. U.S. ex rel. U.S. Dep't of Labor*, 679 F.2d 1350, 1354 (11th Cir. 1982), to evaluate proposed settlement agreements." *Bettger*, 2015 WL 27954, at *9.

Pursuant to *Lynn's Food Stores*, a "proposed compromise may satisfy judicial review if it is a fair and reasonable resolution of a bona fide dispute over FLSA provisions. An agreement resolves a bona fide dispute when there is some doubt as to whether the plaintiff would succeed on the merits at trial." *Id.* at *9. For example, disputed issues may include "FLSA coverage or computation of back wages." *Id.* If the reviewing court decides that a settlement agreement does resolve a *bona fide* dispute, it then proceeds to determine "whether the agreement is fair and reasonable to the plaintiff employee." *Bettger* at *10.

These criteria are among the factors the Court must consider in the settlement of a class action, which include, inter alia, the Court's assessment that the settlement is (1) the product of a bona fide dispute, (2) fair, reasonable, and adequate, and (3) reached through arm's-length negotiation. *Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-729, 2012 WL 1945144, at *5–6 (S.D. Ohio May 30, 2012); quoting *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *5 (N.D. Ohio Mar. 8, 2010). As described in § 6 of the Unopposed Motion for Preliminary Approval, the proposed settlement meets this standard. *See* Doc. 87, § 6.

**5.2. Standard for Rule 23 Settlements**

When evaluating a Rule 23 settlement, courts engage in a two-step process. *See, e.g., Rivera v. Lebanon Sch. Dist.*, No. 1:11-cv-147, 2013 WL 877161, at *1 (M.D. Pa. Mar. 8, 2013). After granting preliminary approval, courts evaluate settlement for final approval and hold a fairness hearing. *Id.* At final approval, courts conduct a robust evaluation, focusing on nine factors. *See Sakalas v. Wilkes Barre Hosp. Co.*, No. 3:11-cv-546, 2014 WL 1871919, at *2 (M.D. Pa. May 8, 2014). Those factors include:

1.   the likely complexity, length, and expense of continued litigation;

2.   the class's reaction to the settlement;

3.   the stage of the proceedings and amount of discovery completed;

4.   the risks of establishing liability;

5.   the risks of establishing damages;

6.   the risks of maintaining the class action through trial;

7.   the defendants' ability to withstand a greater judgment;

8.   the range of reasonableness of the settlement fund in light of the best possible recovery; and

9.   the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.*

In his Motion for Preliminary approval, Plaintiff discussed in detail why all factors other than factor 2 were met. *See* Doc. 87, § 6. Plaintiff restates those arguments herein, and adds that since the notice period has ended, it is appropriate to consider factor 2. None of the 1,415 Class

11

Members objected to the settlement. One Class Member requested exclusion. This represents that the Class had an excellent reaction to the Settlement, and so factor 2 also favors final approval.

## 6.  Notice Process

Plaintiff's Counsel sent notice by first class mail and email (to the extent there was an email address available) to 1,415 Class Members. Notice was issued by claims administrator CPT Group via First Class Mail and email. To extent mailings were returned as undeliverable, CPT Group performed address tracing to obtain new mailing addresses. The Notice period was 60 days. The Notice Period ended on January 29, 2021, and none of the Class Members have objected to the settlement, and one Class Member requested exclusion.

## 7.  Certification of a Settlement Class is appropriate.

Plaintiff explained why Rule 23 class and FLSA collective certification are appropriate in his Motion for Preliminary Approval and incorporates those arguments herein. *See* Doc. 87, §§ 7–9. Defendants consent to class/collective action certification for settlement purposes. *See id.* In its Order Granting Preliminary Approval, the Court certified the Rule 23 class and the FLSA collective action classes. Doc. 91, ¶¶ 2–3. Plaintiff incorporates his arguments from the Motion for Preliminary Approval for why certification of a Rule 23 Settlement Class is appropriate. *See* Doc. 87, § 7.

## 8.  The payment of attorneys' fees and costs is reasonable.

In its Order Granting Preliminary Approval, the Court provisionally approved Plaintiff's Counsel's request for attorneys' fees and costs. Doc. 91, ¶ 12. The Court explained that the "fees and costs will be approved after the final hearing occurs, taking into account any objections." *Id.* There have been no objections.

Class Counsel applies for one-third of the settlement fund as attorneys' fees ($400,000.00). "An award of one-third of the settlement is consistent with similar settlements throughout the Third Circuit." *See Martin v. Foster Wheeler Energy Corp.*, No. 3:06-cv-0878, 2008 WL 906472, at *5 (M.D. Pa. 2008); *In re Ravisent Tech, Inc. Sec. Litig.*, No. Civ. 00-CV-1014, 2005 WL 906361, at *11 (E.D. Pa. Apr. 18, 2005) (awarding one-third of recovery of $3.3 million settlement fund, plus expenses); *In re Corel Corp. Sec. Litig.*, 293 F.Supp.2d 484, 495-98 (E.D. Pa. 2003) (awarding one-third of $7 million settlement fund, plus expenses); *Brandenburg*, 2019 WL 6310376, at *5 (discussing, in a similar pizza delivery driver case, that a one-third award as customary in wage and hour cases).[3]

Accordingly, Class Counsel request one-third of the Settlement Fund in the amount of $400,000.00 in attorneys' fees. Class Counsel's expertise in pizza delivery driver wage and hour cases is well noted—Biller & Kimble, LLC has "established an expertise in pizza delivery driver

---

[3] *Brumley v. Camin Cargo Control, Inc.*, Nos. 08 Civ. 1798, 2012 WL 1019337, at * 12 (D.N.J. Mar. 26, 2012) (granting attorneys' fee request of one-third of $3.9 million settlement fund in wage and hour class action); *Williams v. Aramark Sports, LLC*, No. 10 Civ. 1044, 2011 WL 4018205, at *10–11 (E.D. Pa. Sept. 9, 2011) (granting attorneys' fee award of 33% of $587,500 common fund in wage and hour class action); *Hall v. Best Buy Co., Inc.*, 274 F.R.D. 154, 173 (E.D. Pa. 2011) (approving fee award of 33% in wage and hour class action); *In re Foundry Resins Antitrust Litig.,* No. 04-md-01639, Doc. 245 (S.D. Ohio Mar. 31, 2008) (order awarding fee of 33 1/3% of a $14.1 million dollar settlement); *In re Packaged Ice Antitrust Litig.*, Case No. No. 08-MDL-01952, 2011 WL 6209188, at *19 (E.D. Mich. Dec. 13, 2011) ("Importantly, the requested award of close to 30% appears to be a fairly well-accepted ratio in cases of this type and generally in complex class actions.") (Internal citations omitted); *In re Skelaxin Antitrust Litig.*, Case No. 2:12-cv-83, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014) (finding "the requested counsel fee of one third is fair and reasonable and fully justified."); *Thacker v. Chesapeake Appalachia*, LLC, 695 F. Supp. 2d 521, 528 (E.D. Ky. 2010) ("Using the percentage approach, courts in this jurisdiction and beyond have regularly determined that 30% fee awards are reasonable."); *Kimmel v. Venture Construction Co.*, Case No. 1:10-cv-01388-RLV (N.D. Ga. 2010) (Dkt. 70) (approving 30% of common fund as attorneys' fees and costs); *Moultry v. Cemex, Inc.*, Case No. 8:07-cv-00453- MSS, Dkt. 145 (M.D. Fla. 2008) (awarding 32.25% of common fund as attorneys' fees); *Kemper v. Rent-A-Center, Inc.,* Case No. 4:00-cv-00435-RH-WCS, Docs. 14–15 (N.D. Fla. 2000) (awarding 33.33% of common fund approach to plaintiffs' counsel). In *re AremisSoft Sec. Litig.*, 210 F.R.D. 109, 134 (D.N.J. 2002), the court stated that "[s]cores of cases exist where fees were awarded in the one-third to one-half of the settlement fund." *See, e.g., Erie County Retirees Ass'n v. County of Erie*, 192 F. Supp. 2d 369, 382–83 (38% of common fund was awarded in ADEA case); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 179–80 (W.D.N.Y. 2005) (almost 40% of $125,000 common fund awarded in a FLSA case); *Gilliam v. Addicts Rehab. Ctr. Fund*, Case No. 05 Civ. 3452(RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (finding it reasonable to award class counsel a fee of one-third of the common fund).

litigation, having expended thousands of hours on similar cases which informed and enhanced their representation of Plaintiff here." *Arp v. Hohla and Wyss Enterprises, LLC*, No. 3:18-cv-119, 2020 WL 6498956, *7 (S.D. Ohio Nov. 5, 2020). "A firm's expertise in a niche area provides important context when analyzing the reasonableness of a fee[]… For example, Class Counsel's success on a specific type of case or specific issue augments their ability to obtain favorable results in cases of the same type." *Id*. In this case, Class Counsel's expertise undoubtedly led to the excellent result obtained here.

Class Counsel will oversee the distribution of the Settlement and any forthcoming issues for the next three years. *See id.* (stating "The Court is aware that Class Counsel's work does not end at final approval. Class Counsel frequently spend additional time, sometimes significant time, dealing with class members' inquiries, administration issues, and other post-approval matters."). Class Counsel also requests that $22,102.60 in litigation costs be awarded from the Settlement Fund. These costs include the filing fee, mediation costs, the mailing and emailing of the collective action notice, and the mailing and email of the notice of settlement. *See* Declaration Andrew R. Biller attached as Exhibit 2. Moreover, Defendants will be responsible for the costs associated with three rounds of check distribution through claims administrator CPT Group. *See* Exhibit 1, § 3(E). Defendants will pay these costs separate from the Settlement Fund.

**9. The incentive payment to Plaintiff should be approved.**

In its order granting provisional approval, the Court found the proposed award "reasonable." Doc. 91, ¶ 10. The settlement agreement earmarks funds from the settlement amount to compensate Plaintiff $10,000.00 for work performed as the Class Representative. This amount is in line with identical amounts awarded in similar pizza delivery drivers cases. *See Arledge*

*v. Domino's Pizza*, No. 3:16-cv-386, 2018 WL 5023950, at \*6 (S.D. Ohio Oct. 17, 2018); *Mullins v. Southern Ohio Pizza*, No. 1:17-cv-146, 2019 WL 275711, at \*6 (S.D. Ohio Jan. 18, 2019); *Brandenburg*, 2019 WL 6310376, at \*\*7–8; *Casteel v. Antonio's Pizza, Inc.*, No. 1:18-cv-1277, Doc. 52 (N.D. Ohio May 17, 2019). "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Haught v. Summit Res., LLC*, No. 1:15-cv-0069, 2016 WL 1301011, at \*7 (M.D. Pa. Apr. 4, 2016). Plaintiff spent time and effort working with his counsel on this case. As in any case, Plaintiff bore risk in proceeding with the case, including financial and reputational risk. Without Plaintiff's participation, this class settlement would not have occurred. Plaintiff asks the Court to approve the service fee award to Plaintiff.

## 10. Conclusion

For the reasons set forth above, Plaintiff respectfully requests that the Court grant his motion for Motion for Final Settlement Approval, and for an Award of Attorneys' Fees and Expenses and enter the Proposed Order.

Respectfully submitted,

*/s/ Phil J. Krzeski*
Amy R. Boring, Esquire
ID #208461
Amy@sz-law.com
Michael J. Zicolello, Esquire
ID #65522
mike@sz-law.com
333 Market Street
Williamsport, PA 17701
(570)321-7554

Andrew R. Biller (Lead Counsel) (*pro hac vice*)
BILLER & KIMBLE, LLC

15

4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620
abiller@billerkimble.com

Andrew P. Kimble (*pro hac vice*)
Philip J. Krzeski (*pro hac vice*)
BILLER & KIMBLE, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 202-0710
Facsimile: (614) 340-4620
akimble@billerkimble.com

www.billerkimble.com

*Counsel for Plaintiff and the putative class*

**Certificate of Service**

I hereby certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

/s/*Phil Krzeski*
Philip J. Krzeski